UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**LISA KARAS,**              )

                             )

            **Plaintiff,**      )      **CIVIL ACTION FILE**

                             )

**v.**                      )      **NO. 1:10-CV-2280-SCJ**

                             )

**NEW NGC, INC.,**     )

                             )

           **Defendant.**    )

                             )

## CONSOLIDATED FINAL PRETRIAL ORDER

The parties submit the following as their joint proposed pretrial order.

### 1.

There are no motions or other matters pending for consideration by the Court except as noted:

**The parties have filed Motions in Limine prior to trial.**

### 2.

All discovery has been completed, unless otherwise noted, and the Court will not consider any further motions to compel discovery.  (Refer to LR 37.1B).  Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

- 1 -

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections.

**The Court has jurisdiction over Karas' causes of action for alleged sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*, pursuant to 28 U.S.C. §§ 1331 and 1343.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

> *For Plaintiff:*
> James Radford
> JAMES RADFORD, LLC
> 150 E. Ponce de Leon Ave, Suite 260
> Decatur, Georgia 30030
> (678) 369-3609
>
> *For Defendant:*
> Edward Katze
> CONSTANGY, BROOKS & SMITH, LLP
> 230 Peachtree Street, N.W., Suite 2400
> Atlanta, Georgia 30303
> (404) 525-8622

6.

Normally, the Plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the Plaintiff should not be permitted to open arguments to the jury.

**None.**

### 7.

The captioned case shall be tried to (_X_) a jury or (___) to the Court without a jury, or (___) the right to trial by jury is disputed.

### 8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**The trial shall be bifurcated as to punitive damages.**

### 9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the Court propound to the jurors concerning their legal qualifications to serve.

### 10.

Attached hereto as Attachment "B-1" are the general questions which Plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" the general questions which Defendant wishes to be propounded to the jurors on voir dire examination.

The Court shall question the prospective jurors in accordance with its Civil trial outline at Doc. No. 78-1.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters.  The Court will permit the attorney to propound general pre-approved voir dire questions.

## 11.

State any objections to Plaintiff's voir dire questions.

**The parties list their respective objections to the other's voir dire questions after each attachment, with the heading "Plaintiff's or Defendant's Objections to Voir Dire Questions."  The parties reserve their right to submit additional voir dire questions and objections pursuant to the Instructions for Cases Assigned to the Honorable Steve C. Jones.**

## 12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) nor more than twelve (12) members, unless the parties stipulate otherwise.  The parties must state in the space provided below the basis for any requests for additional strikes.  Unless otherwise

directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870.  See FED.R.CIV.P. 47(b).

**The parties have not requested any additional strikes.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None.**

14.

Attached hereto as Attachment "C" is the Plaintiff's outline of the case which includes a succinct factual summary of Plaintiff's cause of action and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by Plaintiff shall be listed under a separate heading.  In negligence cases, each and every act of negligence relied upon shall be separately listed.  For each item of damage claimed, Plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that

particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the Defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence.   All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the Defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case.  It is the duty of counsel

to cooperate fully with each other to identify all undisputed facts.  A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

**Legal issues identified by Plaintiff**:

1. Whether Defendant discriminated against Karas based on her gender in terminating her employment?

2. Whether Karas is entitled to compensatory damages against Defendant, and, if so, in what amount?

3. Whether Karas is entitled to punitive damages against Defendant, and, if so, in what amount?

4. If Karas prevails on any of her claims, what is the amount of her reasonable attorneys' fees and costs?

**Legal issues identified by Defendants:**

1. Whether Plaintiff's sex was a substantial or motivating factor underlying Defendant's decision to terminate Plaintiff's employment?

2. Assuming, *arguendo*, that Plaintiff's sex was a substantial or motivating factor in the decision to terminate her employment, did Defendant reasonably conclude that Plaintiff had provided false information

regarding her travel and travel expenses such that she would have been terminated regardless of her sex?

3. Assuming, *arguendo*, that Plaintiff prevails in this matter, is Plaintiff's recovery limited by the fact that Defendant would not have hired Plaintiff, and would have terminated Plaintiff's employment, because after-acquired evidence established that Plaintiff had provided Defendant false information regarding her background and qualifications?

4. Assuming, that Plaintiff is entitled prevails in this matter, do Defendant's policies regarding employment discrimination and Defendant's efforts to prevent same preclude Plaintiff from recovering punitive damages?

18.

Attached hereto as Attachment "F-1" for the Plaintiff and Attachment "F-2" for the Defendant is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial.  Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonably specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means.  Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the Plaintiff and "G-2" for the Defendant are the typed lists of all documentary and physical evidence that will be tendered at trial.  Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts.  Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes.  A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to Plaintiff's exhibits, numbered blue stickers to Defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple Plaintiffs or Defendants, the surname of the particular Plaintiff or Defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised.  Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included.  Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial.  Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**None identified at this time.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "I-1" for the Plaintiff and "I-2" for the Defendant are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case.

Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**No briefs are attached.  The parties request permission to file their trial briefs, if any, with the Court ten (10) days prior to the start of trial, or such other time fixed by the Court.**

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, N.D.Ga. will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and

Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "J" to this Pretrial Order.  If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiff's proposed verdict form is attached hereto as Attachment "J-1" and Defendants' proposed verdict form is attached as Attachment "J-2".**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side.  Should any party desire any additional time for argument, the request should be noted (and explained) herein.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.

- 13 -

**Not applicable.**

26.

Pursuant to LR 16.3, ND.Ga, lead counsel and persons possessing settlement authority to bind the parties conferred on **March 6, 2012** to discuss in good faith the possibility of settlement of this case.  The court (___) has or ( X ) has not discussed settlement of this case with counsel.  It appears at this time that there is:

( )   A good possibility of settlement.

( )   Some possibility of settlement.

**( X )   Little possibility of settlement.**

( )   No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

Plaintiff estimates that it will require   1-2   days to present her evidence. Defendant estimates that it will require   1-2   days to present its evidence.  It is estimated that the total trial time is   2-4   days.

- 14 -

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case approved by the Court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice.  Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this 18th day of January, 2013.


s/Steve C.  Jones_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF GEORGIA

## ATTACHMENT A

### (QUESTIONS REGARDING LEGAL QUALIFICATIONS)

The parties request that the following questions be posed to the panel:

1.   Do any of you have difficulty speaking or reading the English language?

2.   Are any of you under the age of 18 years of age?

3.   Do any of you have a charge pending against you for the commission of, or have you been convicted in State or Federal Court of a crime punishable by imprisonment for more than one year, and if so have your civil rights been restored?

4.   Do any of you have a health condition that would prevent you from serving as a juror in this case?

5.   Are any of you not a resident of one of the following counties:  Fulton County, Cobb County, Clayton County, Cherokee County, DeKalb County, Douglas County, Gwinnett County, Henry County, Newton County or Rockdale County?

6.   Have any of you resided in one of these counties for a period of less than one year?

7.   Are any of you not a citizen of the United States?

8.   Are you related by blood or marriage to any of the following individuals?

Lisa Karas;

Todd Mascioli;

James Radford;

Edward Katze;

Joseph Murray;

Bruce Bellile;

Marlette Hess;

Regan Keebaugh;

Mandy Mascioli;

Matt May;

Joseph Millar;

Barbara Sherrill;

Gary Thomas;

John Yakowenko

9.     Do any of you know any of the following individuals?

Lisa Karas;

Todd Mascioli;

James Radford;

Edward Katze;

Joseph Murray;

Bruce Bellile;

Marlette Hess;

Regan Keebaugh;

Mandy Mascioli;

Matt May;

Joseph Millar;

Barbara Sherrill;

Gary Thomas;

John Yakowenko

10. Is anyone a current management employee of NGC or any affiliate company?[1]

---

[1] **COURT'S RULING**:  The Court will permit the above-stated questions to the extent that they are not duplicative of the Court's standard qualifying questions found at Doc. No. 78-1.

**ATTACHMENT B-1**

**(PLAINTIFF'S PROPOSED GENERAL QUESTIONS TO THE JURY)**

The following are the general questions which Plaintiff wishes to be propounded to the jurors on voir dire examination:

1.   The Plaintiff, Lisa Karas, claims that the Defendant New NGC, Inc. terminated her from his position of Human Resources Manager, in whole or in part, because she is a woman.  Without any additional information, is there anyone who believes that this is not the type of dispute that should be brought to court for resolution, or that money should not be awarded to people bringing discrimination claims?

2.   Please raise your hand if you are not aware that it is against the law to discriminate against an employee based on her gender.

3.   At the end of the evidence, the Plaintiff is going to ask the jury to award her for compensatory damages, in addition to her economic damages, to compensate her for mental and emotional suffering arising from her termination. Is there anyone here who would have a personal or philosophical objection to awarding someone financial damages for mental and emotional suffering under these circumstances?

4.   At the end of the evidence, the Plaintiff is going to ask the jury to award her punitive damages, due to the malicious and/or reckless nature of the Defendant's conduct. Is there anyone here who would have a personal or philosophical objection to awarding someone punitive damages under these circumstances?[2]

5.   Who has held a position in which you were responsible for hiring, firing, demoting or promoting employees? If so:

   a.  have you ever made an employment decision that resulted in a claim of discrimination?

   b.  what type of discrimination?

   c.  did that experience cause you to identify more with the employer in claims alleging discrimination?

6.   Has anyone worked in a position where part of your job involved you having to submit expense reimbursement reports, for business-related expenses?

7.   Do any of you go on business related travel?

---

[2] **COURT'S RULING AS TO QUESTION # 4**:  Having granted Defendant's motion in limine to prohibit reference to punitive damages until such time that Plaintiff has presented sufficient evidence to warrant a jury instruction on punitive damages [Doc. No. 101], the Court will not permit Plaintiff to ask question #4.

8.    Have you ever gone on business related travel in which your spouse accompanied you?

9.    Do any of you currently or have any of you ever worked in the area of finance or accounting? If so, what position or positions have you held?

10.   Do any of you currently or have any of you ever worked in the area of human resources or personnel? If so:

   a.  what position?

   b.  for how long?

   c.  did you ever receive any training about discrimination?

   d.  did you ever have to handle complaints of discrimination?

   e.  was your intention to protect the employer in responding to complaints of discrimination?

11.   Have you ever conducted any business with or been employed by National Gypsum or any affiliated company?  If so, describe the nature of your work or business.

12.   Do you know, however slightly, any person who presently works for or has in the past worked for National Gypsum?  If your answer is yes, then state the position in which this person is or was employed, the department in which this person works or worked.

21

13. Have you, or any member of your immediate family, ever been a Plaintiff or a Defendant in any lawsuit? If so, state whether you were a Plaintiff or Defendant, and describe the lawsuit.

14. Were you satisfied with the way your lawsuit was handled and resolved?

15. Have you previously served on a jury in either state or federal court? If so, please tell us the type of case, whether the jury reached a verdict.

16. Have any of you ever served as a foreperson on a jury?

17. If you have previously served on a jury, were you satisfied with your jury service?

18. Have you or has any member of your family or close friends ever filed an administrative complaint or court action charging that an employer discriminated against you?

19. Do any of you feel that you have ever been discriminated against at work? If so, please describe the circumstances and whether the issue was ever resolved.

20. Is there anyone who believes that too many individuals are suing their employer or former employer for discrimination?

21. Do any of you have the opinion that, there are certain jobs that are best suited for women, and certain jobs that are best suited for men?

22.    Please tell us the names of any clubs, groups, or organizations that you belong to?

23.    What newspapers and magazines do you read regularly?

Plaintiff requests that counsel be permitted to ask any follow-up questions as appropriate due to the response to any question.[3]

---

3 **COURT'S RULING**:  With the exception of question #4, discussed *supra* note 3, Plaintiff's voir dire questions are approved.

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S**

**VOIR DIRE QUESTIONS**

Defendant objects to Plaintiff's voir dire question number 4 because it indicates that punitive damages under Title VII may be awarded based on "wrongful and intentional" conduct instead of conduct that involves malice or reckless indifference to a claimant's federally protected rights.  <u>See</u> 42 U.S.C. § 1981a(a)(1).

## ATTACHMENT B-2

**(DEFENDANTS' PROPOSED GENERAL QUESTIONS FOR THE JURY)**

The following are the questions which Defendants wish to be propounded to the jurors on voir dire examination:

1. Do you have any mental or physical infirmity that would prevent you from serving as a juror in this case?

2. Have you, or anyone you know, ever been employed by the law firm of Parks, Chesnin & Walbert, P.C.?[4]

3. Have you ever been involved in a civil lawsuit?  If so, please explain the circumstances.

4. This matter involves an individual suing a corporation.  The corporate defendant expects the jurors in this matter to weigh the evidence in an impartial manner, and to avoid favoring the plaintiff simply because she is an individual and not a corporation.  Do you have any problem doing that?

5. Have you ever had any dealings with New NGC, Inc. or any entity doing business as National Gypsum Company?

---

[4] **COURT'S RULING**:  As stated at the pretrial conference, the Court will also permit this question to be expanded to the law firms presently representing Plaintiff, i.e., James Radford, LLC and The Shelton Law Practice, LLC.

6.    Do you know anyone who works, or has worked, for New NGC, Inc. or any entity doing business as National Gypsum Company?

7.    Have you ever had experience managing or supervising other employees?

8.    Have you ever had your employment terminated by an employer?

9.    Have you ever had a close family member whose employment was terminated by their employer?

10.   Have you or anyone you know ever complained about discrimination in the workplace?  If so, please explain the circumstances.

11.   Have you ever had an employer discipline or terminate you under circumstances that caused you to believe that decision was influenced by a desire to discriminate or retaliate against you?  If so, please explain those circumstances.

12.   Please raise your hand if you are not aware that it is against the law to discriminate against an employee based on his or her sex.

13.   Please raise your hand if you do not believe that the majority of U.S. citizens are aware that it is against the law to discriminate against an employee based on his or her sex.

14.     Do you think it is unreasonable for an employer to expect its employees to submit expense reports in a timely fashion?[5]

15.     Do you think it is unreasonable for an employer to expect an employee dining alone during a business trip to spend less money than an employee who is dining with other employees and business contacts?[6]

16.     Do you think an employer would be justified in terminating an employee for submitting a false or fraudulent expense report?[7]

17.     Do you think that the phrase "we really need a man in your job" is any less of a statement of illegal motivation than "we really need a white person in your job"?[8]

18.     If an employer has a clearly defined procedure by which employees can report discrimination and harassment, do you think it is unreasonable for that employer to expect an employee to take advantage of that procedure and make a complaint when her boss makes a statement such as "we really need a man in your job"?[9]

---

[5] **COURT'S NOTE**:  At the January 16, 2013 pretrial conference, Plaintiff's counsel withdrew objection to Question 14.  Said question will be permitted at voir dire.
[6] **COURT'S RULING**:  Questions 15 -19 are *not* approved as they call for jurors to improperly prejudge the case and/or constitute improper commitment (to a particular verdict) questions.
[7] See note 6.
[8] See note 6.
[9] See note 6.

19.     Do you think it is suspicious that someone who claims she was terminated after her supervisor said "we really need a man in your job" never mentioned that in writing in her charge of sex discrimination with the EEOC or other submissions to the EEOC?[10]

20.     Do you think it is unreasonable to expect a person who is seeking compensation based on alleged emotional distress and mental anguish to offer proof that she indeed suffered such damages?

Defendant requests that counsel be permitted to ask any follow-up questions as appropriate due to the response to any question.

---

10 See note 6.

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS'
## VOIR DIRE QUESTIONS

Plaintiff objects to questions 14, 15, 18, 19, and 20 on the basis that they are argumentative and overly suggestive of the evidence to be presented to the jury and the desired outcome of the Defendants.

## <u>ATTACHMENT C</u>

## (PLAINTIFF'S OUTLINE OF THE CASE)

**Contentions:**

Defendant New NGC, Inc. ("NGC") operates a manufacturing plant located at 1541 Buford Highway, Duluth, Gwinnett County, Georgia, where it produces wallboard as well as interior fixing products, such as joint compounds and texture products, for use in construction.

Karas began her employment with NGC on October 3, 2006, as an hourly administrative assistant at the Duluth plant. On April 4, 2007, Karas was promoted to "Plant Administrator II" as a salaried employee. In this capacity, Karas functioned as the Office Manager and Human Resources Coordinator for the Duluth plant.

In mid-September 2008, Todd Mascioli ("Mascioli"), who had recently been promoted to Plant Manager of the Duluth plant, told Karas that he did not believe Karas was being "tough enough" on the employees. On two occasions, Mascioli made statements to the effect that he "wanted to try and man in this position."[11]

On October 7, 2008, Mascioli terminated Karas. Mascioli replaced Karas

---

[11] **COURT'S NOTE:** this quote appears to contain a typographical error.

with Joe Millar, who is male.

Mascioli told Karas that he was terminating her for improperly requesting reimbursement on a company expense report for roughly $210 in food and lodging expenses associated with a mandatory company training seminar that Karas attended on August 20 and 21, 2008, in Charlotte, North Carolina. Mascioli later asserted that Karas had told him that her husband would not be accompanying her on the business trip; whereas Karas contends she disclosed that her husband would be present.

The record shall demonstrate that the reasons asserted by Mascioli for Karas' termination are lacking in credibility and are pretexts for discrimination. The record shall also demonstrate that similarly-situated male employees were treated more favorably that Karas for violation of the same policies.

**Relevant Rules, Regulations, and Statutes:**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981a.

**Damages and Other Relief Sought:**

Special damages for lost wages and other economic losses, in an amount not less than $120,000 (42 U.S.C. § 2000e-5(g)(1)); reinstatement or, in the

alternative, reasonable front pay (42 U.S.C. § 2000e-5(g)(1)); general compensatory damages in an amount determined by the enlightened conscience of the jury, but not less than $300,000 (42 U.S.C. § 1981a(b)); punitive damages in an amount determined by the enlightened conscience of the jury, but not less than $300,000 (42 U.S.C. § 1981a(b)); and attorneys' fees and costs (42 U.S.C. § 2000e-5(k)).

## <u>ATTACHMENT D</u>

**(DEFENDANTS' OUTLINE OF THE CASE)**

**Contentions:**

On or about October 3, 2006, Defendant New NGC, Inc. ("NGC" or "Company") hired Plaintiff as an hourly Administrative Assistant for the Atlanta plant.  On April 4, 2007, Plaintiff was promoted to "Plant Administrator II" as a salaried employee.  Functionally, Plaintiff began serving as both the Office Manager and the Human Resources coordinator for the Atlanta plant.

Shortly after becoming a salaried employee, Plaintiff signed up for and was issued a corporate credit card to use for travel and other business-related, reimbursable expenditures.  The corporate card program is administered by Barbara Sherrill, a Company employee based in Charlotte, North Carolina. When Plaintiff applied for a corporate credit card, she was directed to review the Company's policies on business travel, including its policies on travel with spouses, reasonable meal expenses, documentation required for expenses reimbursement, and prohibitions against using corporate credit cards for personal expenses.  Unfortunately, on several occasions Plaintiff used the card for personal charges, prompting Sherrill to remind her of the policies pertaining to corporate credit cards.

In August 2008, Plaintiff was scheduled to travel to Charlotte, North Carolina for training in business policies and office procedures. Financial Manager Bruce Bellile arranged the August training session specifically for Plaintiff and Marlette Hess, Plaintiff's counterpart at the Company's Belcamp, Maryland plant. The training lasted two days (August 20 and 21), and gave both women an opportunity to learn from and interact with Bellile and other corporate level managers.

Because the corporate office is just some 228 miles from the Atlanta plant, Plaintiff rented a car and drove to Charlotte on August 19. The Company made reservations for both Plaintiff and Hess at a local hotel, and several of the presenters "carried" them to (and paid for) dinner one of the two nights they were there. In addition, breakfast was provided for them by their hotel, and lunch was provided for them by the Company. The training ended before lunch on August 21, giving both women time to travel home that afternoon. Plaintiff called in sick the following day, however, and did not return to work until Monday, August 25, 2009.

Plaintiff did not finish submitting her expenses for the August trip until October 2008. Unfortunately, soon after that report was submitted, Company officials noted irregularities which, upon investigation, indicated that Plaintiff

had requested reimbursement for a number of charges that were either unreasonable or personal in nature.  For example, the charges on Plaintiff's hotel bill included approximately $45 at the hotel lounge, $40 for room service, and $56 at one of the hotel restaurants.  Plaintiff also submitted a dinner receipt from a Charlotte restaurant, including tip, for $68.   In total, Plaintiff sought reimbursement for over $200 worth of unjustified expenses.  Upon investigation, the Company learned from Hess and others that Plaintiff's husband had accompanied her on the trip, and concluded that many of the charges submitted by Plaintiff were the result of their traveling together.

On October 3, 2008, Plaintiff's supervisor, Plant Manager Todd Mascioli, confronted Plaintiff about the unreasonable and unjustified expenses for which she had sought reimbursement.  During that conversation, Mascioli specifically asked if some of those charges were attributable to the fact that Plaintiff's husband had been traveling with her.  Plaintiff denied that her husband had been with her, yet offered no credible explanation for the excessive charges included on her expense report.

In her Complaint, Plaintiff alleged that she "had specifically sought and received approval from Mascioli prior to the trip to Charlotte for her husband to accompany her and for her to pay for her husband's meal and lodging expenses

with the company expense account."   Later, after giving deposition testimony contradicting that allegation, Plaintiff moved to amend her Complaint to remove that false allegation.

Defendant regarded Plaintiff's fraudulent expense request as serious misconduct.  Moreover, when Mascioli confronted her, Plaintiff refused to admit any wrongdoing and maintained that her husband had not accompanied her on the trip.  As a result of these two instances of misconduct (fraud and lying during the resulting investigation), the Company terminated Plaintiff's employment on or about October 7, 2008.

Despite the fact that Plaintiff was admittedly familiar with the Company's non-discrimination policies and its procedure by which employees can report discrimination, Plaintiff failed to utilize that reporting procedure either before or after her termination.  Further, neither her charge of discrimination filed with the EEOC nor any of her subsequent submissions to the EEOC pointed to the alleged statement by Mascioli that he really needed a man in her job.

**Relevant rules, regulations, statutes, ordinances and illustrative case law relied upon by Defendants:**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), federal regulations promulgated pursuant to Title VII, and case

law applying the legal principles applicable to claims brought pursuant to Title VII and other federal discrimination statutes analyzed under the same framework as Title VII claims, including but not limited to the following: 42 U.S.C. § 2000e-5(g)(2)(B); <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133 (2000); <u>Kolstad v. American Dental Assoc.</u>,527 U.S. 526 (1999); <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352 (1995); <u>Silvera v. Orange County Sch. Bd.</u>, 244 F.3d 1253 (11th Cir. 2001); <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328 (11th Cir. 1999); <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519 (11th Cir. 1997), <u>cert. denied sub nom.</u>, <u>Combs v. Meadowcraft Co.</u>, 522 U.S. 1045 (1998); <u>Coutu v. Martin Board of County Commissioners</u>, 47 F.3d 1068 (11th Cir. 1995); and <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466 (11th Cir. 1991).

**ATTACHMENT E**

**(STIPULATED FACTS OF THE PARTIES)**

1.  Headquartered in Charlotte, North Carolina, New NGC, Inc. (which does business as "National Gypsum Company", and is hereafter referred to as "NGC") manufactures both gypsum wallboard and interior finishing products such as joint compounds and texture products.

2.  New NGC, Inc. employs more than 500 employees.

3.  In Georgia, NGC manufactures interior finishing products at its facility located at 4125 Buford Highway, Suite 100, Duluth, Georgia 30096 (the "Atlanta plant").

4.  From January 1, 2006 until December 31, 2010, the Plant Manager of the Atlanta Plant reported directly to Regional Manufacturing Manager John Yakowenko.

5.  On or about October 3, 2006, Tim Ryan hired Plaintiff as an hourly Administrative Assistant for the Atlanta plant.

6.  In April 2007, Plaintiff was promoted to a salaried "Plant Office Administrator II," the position she held until her termination.

7.  As Plant Office Administrator II, Plaintiff's job duties included, among other things, monitoring inventory, ordering raw materials, dealing with

38

vendors, helping to manage the manufacturing costs summary budget, taking customer service calls, maintaining employee files, entering payroll, explaining benefits to employees, participating in employee meetings, and listening to employee complaints and concerns.

8.    Yakowenko replaced the former Atlanta Plant Manager Tim Ryan with Todd Mascioli, an Assistant Plant Manager at an NGC plant in Dallas, Texas.

9.    In July 2008, Mascioli performed Plaintiff's mid-year evaluation, rating Plaintiff as having "Solid Performance" for the five objectives specified for her positions.

10.   NGC's Travel Policy states that the "Company does not reimburse for any expenses incurred by a spouse traveling with an employee on company business" but does state that "an employee may travel with his or her spouse and pay for their expenses personally."

11.   In August 2008, Plaintiff and Marlette Hess, her counterpart from NGC's Belcamp, Maryland Plant, traveled to NGC's corporate headquarters in Charlotte, North Carolina for training in business policies and office procedures.

## ATTACHMENT F-1

### (PLAINTIFF'S WITNESS LIST)

**Plaintiff Will Call:**

Lisa Karas

**Plaintiff May Call:**

Todd Mascioli

Gary Thomas

Joseph Millar

Any witnesses properly identified by Defendants.

## **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S WITNESS LIST**

None.

**ATTACHMENT F-2**

**(DEFENDANTS' WITNESS LIST)**

**Defendants will call:**

Todd Mascioli

**Defendants may call:**

Bruce Bellile

Marlette Hess

Lisa Karas

Mandy Mascioli

Matt May

Barbara Sherrill

John Yakowenko


Any and all witnesses identified by Plaintiff.

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S WITNESS LIST

None.

**ATTACHMENT G-1 (as amended)[12]**

**PLAINTIFF'S AMENDED
DOCUMENTARY AND PHYSICAL EVIDENCE LIST**

| LISA KARAS' EXHIBIT LIST | | |
|---|---|---|
| Exhibit | Admitted | Description |
| 1. | | Lisa Karas 2007 performance evaluation |
| 2. | | Pre-employment background check summaries (Dfts. Bates 1869-1891) |
| 3. | | Separation Records from Progressive Lighting (Dfts. Bates 1892-1893) |
| 4. | | Sterling Testing Pre-employment background check records (Dfts. Bates 1990-1995) |
| 5. | | NGC "Business vs. Travel Expenses" Policy |
| 6. | | NGC "Meals and Entertainment" Policy |
| 7. | | NGC EEOC Position Statement dated April 9, 2009 |

---

12 See order at Doc. No. 103 – allowing Plaintiff to amend her original exhibit list.

| LISA KARAS' EXHIBIT LIST | | |
|---|---|---|
| Exhibit | Admitted | Description |
| 8. | | April 18, 2008 Expense Report of Lisa Karas, with attachments |
| 9. | | Supplemental Expense Report labeled "HR training left over expenses lost in system due to card change account," with attachments. |
| 10. | | Receipts associated with April 18, 2008 expense report and its supplement (Plfs. Exh 13 to Mascioli deposition). |
| 11. | | Spreadsheet of Karas expenses from June 6, 2007 to August 28, 2008. |
| 12. | | October 3, 2008 Expense report for Lisa Karas, with attachments. |
| 13. | | Frank Manzetti's Tavern Menu |
| 14. | | Joseph Millar January 2011 expense report (Dfts. Bates 1813) |
| 15. | | Joseph Millar December 2010 expense report (Dfts. Bate 1803 et seq.) |
| 16. | | Joseph Millar November 2010 expense report (Dfts. Bates 1789 et seq.) |

| LISA KARAS' EXHIBIT LIST | | |
|---|---|---|
| Exhibit | Admitted | Description |
| 17. | | Joseph Millar September 2010 expense report (Dfts. Bates 1765 et seq.) |
| 18. | | Joseph Millar August 2010 expense report (Dfts. Bates 1757 et seq.) |
| 19. | | Joseph Millar September 2009 expense report (Dfts. Bates 1624 et seq.) |
| 20. | | Joseph Millar August 2009 expense report (Dfts. Bates 1617 et seq.) |
| 21. | | Joseph Millar July 2009 expense report (Dfts. Bates 1604 et seq.) |
| 22. | | Spreadsheet of Joseph Millar expenses Jan 1, 2008-Feb 7, 2011 |
| 23. | | Jill Swanson August 2010 expense report (Dfts. Bate 1407 et seq.) |
| 24. | | Jill Swanson July 2010 expense report (Dfts. Bates 1395) |
| 25. | | Jill Swanson October 2009 expense report (Dfts. Bates 1326) |
| 26. | | Jill Swanson November 2008 expense report (Dfts. Bates 1250 et seq.) |

| LISA KARAS' EXHIBIT LIST | | |
|---|---|---|
| Exhibit | Admitted | Description |
| 27. | | Marlette Hess expense report related to August 2008 training in Charlotte, NC (Dfts. Bates 0847 et seq.) |
| 28. | | Marlette Hess expense report for periods 2/21/2007 – 3/07/2007 (Dfts. Bates 0751 et seq.) |
| 29. | | Spreadsheet of Marlette Hess expenses (Dfts. Bates 0743 et seq.) |
| 30. | | Email to Todd Mascioli from Rassandra Cody, including email between Matthew May and Rassandra Cody (Oct. 7 and 8, 2008). |
| 31. | | Medical records of Lisa Karas |
| 32. | | Most recent record of Plaintiff's wages from Defendant |
| 33. | | Pages 17-19 of Defendant's Brief in Support of Motion for Summary Judgment. |
| 34. | | Pages 9-10 of Defendant's Objections to the Magistrate's Report and Recommendations. |

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EXHIBIT LIST

| Exhibit | Objections |
|---------|-----------|
| 13. | Defendant objects to the extent Plaintiff fails to lay a proper foundation establishing that this exhibit is a true and correct copy of the menu that was used by Frank Manzetti's Tavern on August 20, 2008. |
| 23. | Defendant objects to this exhibit as not relevant to any issue in this matter.  (Fed. R. Evid. 401) |
| 24. | Defendant objects to this exhibit as not relevant to any issue in this matter.  (Fed. R. Evid. 401) |
| 25. | Defendant objects to this exhibit as not relevant to any issue in this matter.  (Fed. R. Evid. 401) |
| 26. | Defendant objects to this exhibit as not relevant to any issue in this matter.  (Fed. R. Evid. 401) |
| 33. | Defendant objects to this exhibit as hearsay that is not relevant to any issue in this matter and will be prejudicial, confuse the issues, and mislead the jury.  (Fed. R. Evid. 401, 403, and 801). Defendant further objects to the admission of only a portion of the complete document. (Fed. R. Evid. 106). |
| 34. | Defendant objects to this exhibit as hearsay that is not relevant to any issue in this matter and will be prejudicial, confuse the issues, and mislead the jury.  (Fed. R. Evid. 401, 403, and 801). Defendant further objects to the admission of only a portion of the complete document. (Fed. R. Evid. 106). |

Defendant reserves the right to object to any document *in limine* after

receiving copies of marked exhibits to the extent that the content of which

cannot be determined by the above descriptions and may consist of documents

other than those believed to be included in the exhibit list.[13]

13 **COURT'S NOTE**:  Unless subject to stipulation and/or otherwise ordered, the Court will rule upon the admissibility of a listed exhibit at the time that the exhibit is offered into evidence.

**ATTACHMENT G-2 (as amended)[14]**

**DEFENDANT'S AMENDED
DOCUMENTARY AND PHYSICAL EVIDENCE LIST**

| DEFENDANT NEW NGC, INC.'S EXHIBIT LIST | | |
|---|---|---|
| Exhibit | Admitted | Description |
| 1. | | Application for Employment submitted by Lisa Karas  (CB&S 509-510) |
| 2. | | Lisa Karas' resume listing work history through 6/2006  (CB&S 511-512) |
| 3. | | May 16, 2008 Certificate for Successful Completion of Manufacturing Management Skills Program Core Curriculum for Lisa Karas (Exh. 4 to Karas deposition) |
| 4. | | February 12, 2008 email from Lisa Karas to Kaye Davis,  with email trail (Karas 64-65) |
| 5. | | 2007 Performance Evaluation for Lisa Karas   (Karas 51-56) |
| 6. | | 2008 Performance Evaluation for Lisa Karas  (Karas 76-80) |
| 7. | | Employment Policy (Karas 305) |

---

14 See order at Doc. No. 103 – allowing Defendant to amend its original exhibit list.

50

| | | |
|---|---|---|
| 8. | | Harassment Policy (Karas 306-307) |
| 9. | | July 8, 2008 email from Sam Schiffman to Lisa Karas  (Exh. 5 to Karas deposition) |
| 10. | | Business vs. Personal Travel Expenses Policy (CB&S 706-707) |
| 11. | | Meals and Entertainment Policy (CB&S 705) |
| 12. | | October 7, 2008 email from Barbara Sherrill to Lisa Karas  (CB&S 476) |
| 13. | | Lisa Karas expense report for August 18-24, 2008  (Karas 674-681) |
| 14. | | Doubletree Hotel food receipt for August 19, 2008 at 2:26 p.m. |
| 15. | | Doubletree Hotel food receipt for August 19, 2008 at 8:11 p.m. |
| 16. | | Doubletree Hotel food receipts for August 20, 2008 at 12:37 p.m. and 1:24 p.m. |
| 17. | | Doubletree Hotel food receipt for August 20, 2008 at 5:11 p.m. |
| 18. | | Doubletree Hotel food receipt for August 21, 2008 at 6:51 a.m. |

| | | |
|---|---|---|
| 19. | | Doubletree Hotel food receipt for August 21, 2008 at 11:58 a.m. |
| 20. | | Doubletree Hotel statement summarizing food charges for August 19 through August 21, 2008 |
| 21. | | EEOC EAS Questionnaire submitted by Lisa Karas   (Karas 118-121) |
| 22. | | EEOC Charge of Discrimination No. 410-2008-01849  (Karas 45) |
| 23. | | Memorandum for EEOC prepared by Lisa Karas  (Karas 115-117) |
| 24. | | EEOC Investigation file for Charge of Discrimination No. 410-2009-01849 (CB&S 1–464) |
| 25. | | EEOC Records Authentication Certificate signed by Bernice Williams-Kimbrough  (CB&S 0001) |
| 26. | | EEOC case log  (CB&S 0008) |
| 27. | | EEOC Dismissal and Notice of Rights (CB&S 0010) |
| 28. | | Georgia Department of Labor Claims Examiner's Determination, with Karas fax cover  (CB&S 0027-28) |
| 29. | | April 15, 2010 email from Lisa Karas to EEOC Investigator Daniel Nance (CB&S 0026) |

| | | |
|---|---|---|
| 30. | | November 18, 2009 email from Lisa Karas to EEOC Investigator Daniel Nance  (CB&S 0034-35) |
| 31. | | November 5, 2009 email from Lisa Karas to EEOC Investigator Daniel Nance   (CB&S 0036) |
| 32. | | May 27, 2009 letter from Lisa Karas to EEOC Investigator Daniel Nance (CB&S 0037) |
| 33. | | May 27, 2009 letter from Lisa Karas to EEOC investigator Daniel Nance (CB&S 0042) |
| 34. | | Lisa Karas Employee Contacts prepared by Todd Mascioli  (CB&S 0465-66) |
| 35. | | 2008 Yearly Report of Hours Worked, Overtime and Absence Report (CB&S 0467-68) |
| 36. | | Notes from October 9, 2008 meeting prepared by Todd Mascioli  (CB&S 0469) |
| 37. | | IRS Form 1040A for 2007 signed by Lisa Karas  (Karas 321-322) |
| 38. | | Lisa Karas W-2 for 2007 from New NGC, Inc.  (Karas 320) |
| 39. | | IRS Form 1040A for 2008 signed by Lisa Karas  (Karas 367-369) |

| | | |
|---|---|---|
| 40. | | Lisa Karas W-2 for 2008 from New NGC, Inc.  (Karas 333) |
| 41. | | Lisa Karas W-2 for 2008 from Norman Brooks  (Karas 372) |
| 42. | | Lisa Karas W-2 for 2009 from Western & Southern Life  (Karas 398) |
| 43. | | January 14, 2011 paycheck stub for Lisa Karas from Western & Southern Life (Karas 400) |
| 44. | | IRS Response form CP2000 and handwritten narrative prepared by Lisa Karas   (Karas 362-365) |
| 45. | | Lisa Karas Record of Work Search (Karas 312-319) |
| 46. | | Pages 1 and 4 of the Complaint (Dkt # 1) |
| 47. | | Motion to Amend Complaint to Conform to the Evidence  (Dkt # 48) |
| 48. | | Proposed Second Amended Complaint (Dkt # 48-02) |
| 49. | | Plaintiff's Initial Disclosures |
| 50. | | Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff |

| 51. | | Marlette Hess expense reports with expenses for August 2008 trip to Charlotte (CB&S 683 *et seq.*) |
| 52. | | Lisa Karas expense report for August 18-24, 2008, with Todd Mascioli's handwritten notes (Karas 472-475) |
| 53. | | John Yakowendo expense report for August 2008 that included Lisa Karas |
| 54. | | Bruce Bellile expense report for August 2008 meals that included Lisa Karas |
| 55. | | EEOC affidavit signed by Todd Mascioli (Karas 168-170) |
| 56. | | EEOC affidavit signed by John Yakowenko  (Karas 171-172) |

Defendant may seek to amend this list of documentary and physical evidence by giving reasonable notice prior to trial of any such additional documentary or physical evidence to opposing counsel, in accordance with the Federal Rules.  Defendant's list may also be affected by the Court's ruling on any motion *in limine*.[15]

---

[15] **COURT'S NOTE**:  Unless subject to stipulation and/or otherwise ordered, the Court will rule upon the admissibility of a listed exhibit at the time that the exhibit is offered into evidence.

## PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EXHIBIT LIST

| Exhibit | Objections |
|---|---|
| 1. | Relevance.  Fed. R. Evid. 401 |
| 2. | Relevance.  Fed. R. Evid. 401 |
| 4. | Relevance.  Fed. R. Evid. 401 |
| 9. | Relevance.  Fed. R. Evid. 401 |
| 12. | Relevance.  Fed. R. Evid. 401 |
| 21. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 23. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 24. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 25. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 26. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 27. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 29. | Relevance.  Fed. R. Evid. 401. |
| 30. | Relevance.  Fed. R. Evid. 401. |
| 31. | Relevance.  Fed. R. Evid. 401. |
| 32. | Relevance.  Fed. R. Evid. 401. |
| 33. | Relevance.  Fed. R. Evid. 401. |
| 49. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801, Unduly Prejudicial. Fed. R. Evid. 403 |
| 50. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801, Unduly Prejudicial. Fed. R. Evid. 403 |
| 51. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 52. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801, Unduly Prejudicial. Fed. R. Evid. 403 |
| 53. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 54. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |

| | |
|---|---|
| 55. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 56. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |

| | |
|---|---|
| 25. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 26. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 27. | Relevance.  Fed. R. Evid. 401. Hearsay. Fed. R. Evid. 801 |
| 29. | Relevance.  Fed. R. Evid. 401. |
| 30. | Relevance.  Fed. R. Evid. 401. |
| 31. | Relevance.  Fed. R. Evid. 401. |
| 32. | Relevance.  Fed. R. Evid. 401. |
| 33. | Relevance.  Fed. R. Evid. 401. |

Plaintiff reserves the right to object to any document *in limine* after receiving copies of marked exhibits to the extent that the content of which cannot be determined by the above descriptions and may consist of documents other than those believed to be included in the exhibit list.

**ATTACHMENT J-1**

**(PLAINTIFF'S PROPOSED JURY VERDICT FORM**)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LISA KARAS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:10-CV-2280-SCJ |
| | ) | |
| NEW NGC, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VERDICT FORM**

1.      Do you find by a preponderance of the evidence that Lisa Karas' gender

was a motivating factor in Defendant's decision to terminate her?

         Answer: _____ Yes _____ No

[*If you answered "YES" to Question No. 1 above, proceed to Question No. 2.   If you*

*answered "NO" your analysis is complete.*]

2.      State the amount of economic losses you determine, by a preponderance of

the evidence, Lisa Karas suffered as a result of her termination.

         $   _____

3.      Do you find by a preponderance of the evidence that Lisa Karas should be

awarded compensatory damages for mental and emotional pain and suffering?

     Answer:  _____ Yes _____ No

     If your answer is "Yes," in what amount? $_____


4.      Do you find by a preponderance of the evidence that Lisa Karas should be

awarded punitive damages?

     Answer:  _____ Yes _____ No

     If your answer is "Yes," in what amount? $_____


     SO SAY WE ALL, this _____ day of _____, 20 ____.




                                _____
                                FOREPERSON

**ATTACHMENT I-2**
**(DEFENDANTS' PROPOSED JURY VERDICT FORM**)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LISA KARAS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:10-CV-2280-SCJ |
| | ) | |
| NEW NGC, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VERDICT FORM**

1.     Do you find from a preponderance of the evidence that Todd Mascioli, in conversation with Lisa Karas, did <u>NOT</u> say that he believed a man was needed in her position?

Answer: _____ Yes _____ No

2.     Do you find from a preponderance of the evidence that Lisa Karas submitted a false and fraudulent expense report to New NGC, Inc.?

Answer: _____ Yes _____ No

[*If you answered "YES" to both Question No. 1 and Question No. 2, your analysis is complete.   If you answered "NO" to either question, proceed to Question No. 3.*]

60

3.      Do you find from a preponderance of the evidence that Plaintiff would have been discharged from employment for other reasons even in the absence of any consideration of Plaintiff's sex?

Answer: _____ Yes _____ No

4. (a) Do you find from a preponderance of the evidence that a higher management official of the Defendant acted with malice or reckless indifference to the Plaintiff's federally protected rights?

Answer: _____ Yes _____ No

(b)  If your answer to 4(a) is Yes, do you further find from a preponderance of the evidence that the Defendant has acted in a good faith to comply with the law by adopting policies and procedures designed to prohibit discrimination in the workplace?

Answer: _____ Yes _____ No

SO SAY WE ALL, this _____ day of _____, 20 ____.

_____
FOREPERSON

DATE: _____16

---

16 **COURT'S NOTE**:  The Court will consider both parties' verdict form submissions and prepare its own verdict form prior to the charge conference.